S. Samuel Di Falco, S.
The Attorney-General of the State of New York, representing the ultimate but indefinite charitable beneficiaries under the decedent’s will, has filed objections to the executors’ account. The objections are concerned with the failure of the executors to allocate to the charitable account any part or share of the net realized increases on principal which occurred during the period of administration.
It is the Attorney-General’s contention that, the testator’s gift to charity was of a “ fractional ” share of the estate which would entitled it to its proportionate share of the increases in principal which total approximately $800,000. The executors and the special guardian on the other hand contended that the gift was ‘ ‘ pecuniary ’ ’ in nature, to wit, a gift of a definite ascertainable amount which does not share proportionately or otherwise in the increase of principal accruing during the period of administration.
The pertinent provisions of the testator’s will which require interpretation are found in article Fourteenth of the second codicil to his will which reads as follows: “I give and bequeath fifteen (15) percent of my net adjusted gross estate, free of all liability from any estate and inheritance taxes, to such recognized corporations organized under and pursuant to the laws of the United States or District of Columbia or one of the states of the United States as devote themselves exclusively to Jewish charitable or educational purposes, principally in Israel or the United States, or both, as my executors and trustees may select.”
By Article First of the third codicil the foregoing provision was amended to increase the percentage for charities from 15% to 20% and to provide for a minimum general legacy of $37,500 to be paid out of that fund to the National Committee for Labor, Israel, Inc. for specified purposes.
The cases dealing, with the problem are of comparatively recent origin having arisen in the main since the. enactment of the marital deduction provisions of the Internal Revenue Code. *701 Since that time, the greater incidence of capital growth during the period of estate administration has presented our courts with the problem with increasing frequency.
All of the cited cases deal with attempts by testators to give their wives and their estates the benefit of. the greatest tax savings through the employment of the marital deduction provisions of the Internal Revenue Code. Unfortunately, will draftsmen have generally failed to take into account the problem of capital increases accruing during the period of administration and our courts in order to carry out the intent of testators to bestow the greatest possible benefits on their widows have often been forced into what almost appears to be an exercise in semantics in order to draw the fine and almost invisible line between “ pecuniary ” and “ fractional legacies ”.
Thus when testators have used such wards “ an amount ” or “ a sum ” or terminology such as “ a part equal to ” or “a share equal to ” our courts have construed these words to indicate the intent of the testator to bestow a pecuniary legacy (Matter of Gilmour, 18 A D 2d 154; Matter of Gauff, 27 Misc 2d 407; Matter of Leonard, 45 Misc 2d 534; Matter of Kennedy, 39 Misc 2d 688).
On the other hand where testators have used language such as “ a part ” or “ a portion ” or “ a percentage ” of the estate our courts have usually construed the language to indicate an intent to bestow a fractional legacy (Matter of Bing, 23 Misc 2d 326; Matter of Ossman, 27 Misc 2d 632; Matter of Schimenti, 42 Misc 2d 983; Matter of Mueller, 34 Misc 2d 584; Matter of Bush, 2 AD 2d 526, affd. 3 N Y 2d 908).
It is difficult for this court to differentiate between a legacy of “ one-half of my adjusted gross estate ” and a legacy of an “ amount equal to one-half of my adjusted gross estate ” and it doubts whether the testators when they drew their wills had any precise understanding of the difference between these terms. One important distinguishing feature occurs when the bequest is made out of the residuary estate. As to such gift the court can with some degree of certainty say that a “ fractional ” gift was intended because the size of the gift is not ascertainable until all tax proceedings have been completed and the final accounting has been filed.
In the case at bar we are concerned with a preresiduary gift to charity, and not with a marital deduction gift made by the testator for the purpose of taking full advantage of section 2056 of the Internal Revenue Code (U. S. Code, tit. 26, § 2056). The testator was fully aware that such gifts are not taxable and served as a reduction of his gross estate for tax purposes. In *702 setting forth the guidelines to be used by his executors in the selection of the charities to share the gift he stated: “I direct that the corporations thus selected shall be corporations, no part of whose net earnings enures to or is paid to or for the benefit of private stockholders or individuals and no substantial part of whose activities shall be carrying on propaganda or otherwise attempting to influence legislation. ’ ’ This language which is lifted verbatim from section 2055 (subd. [a], par. [2]) of the Internal Revenue Code (U. S. Code, tit. 26, § 2055, subd. [a], par. [2].) attests to the testator’s desire to'make a ■valid, unassailable and untaxable gift to charity.
-The testator’s gift to charity of 20% of his “net adjusted gross estate ” was a definitely ascertainable amount based upon the valuation of all estate assets as of the date of death or the alternative valuation date one year later as provided for by section 2032 of the Internal Revenue Code (TJ. S. Code, tit. 26, § 2032). The term “ adjusted gross estate” is tax language which has acquired a definite meaning to lawyers and to laymen alike and is indicative of the testator’s intent to fix the gift to charity by a simple computation before- the value of his residuary estate could be ascertained. The adjusted gross estate is arrived at by the deduction from the gross estate of all debts and administration expenses as allowed by the Federal estate taxing authorities even though this figure may not coincide exactly with the allowances for administration expenses as fixed on the executor’s final account.
This court can find no indication in the will and codicils executed by this testator of an intent that the charities should share either in the increases or decreases in the principal of his estate by reason of either the rise or fall of the market. Once the valuation date of the testator’s estate was selected by the executors, the gift to charity was virtually fixed and they would have been entitled to receive that amount whether or not there had been increases or decreases in principal during the period of administration. The objections of the Attorney-General are, therefore, dismissed.